## AUTOMATIC PENCIL SHARPENER CO. v. BOSTON PENCIL POINTER CO.

(Circuit Court of Appeals, First Circuit. February 21, 1922.)

No. 1511.

1. **Courts ⬤⟜352—Adoption by federal court of state practice of taking alternative verdicts approved.**

Adoption by the federal courts in Massachusetts of the state practice in actions at law of taking the verdict of the jury finding plaintiff's damages, and also a verdict for defendant if the court should rule that as matter of law plaintiff was not entitled to recover, approved.

2. **Patents ⬤⟜314—When question of infringement is one of law.**

When the question of infringement depends on the construction and scope of the patent, and that does not require expert testimony or depend on any doubtful question of the prior art, it is a question of law for the court.

3. **Patents ⬤⟜328—640,846, for pencil sharpener, held not infringed.**

The Webster patent, No. 640,846, for a pencil sharpener, claim 4, *held* not infringed.

In Error to the District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

Action at law by the Automatic Pencil Sharpener Company against the Boston Pencil Pointer Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Henry M. Huxley, of Chicago, Ill. (Sherman L. Whipple and Edward O. Proctor, both of Boston, Mass., on the brief), for plaintiff in error.

E. Clarkson Seward, of New York City, and Asa P. French, of Boston, Mass., for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This is an action at law to recover damages for the alleged infringement of Webster's patent, No. 640,846, dated January 9, 1900, for a pencil sharpener.

[1] After a long trial before a jury, the court below ruled that as matter of law the plaintiff was not entitled to recover. The verdict was returned in the form of an alternative verdict; the jury finding, subject to the court's ruling on the question of law, for the plaintiff in the sum of $16,670, but consenting to a verdict for the defendant if the court should rule that as matter of law the plaintiff was not entitled to a verdict.

In the view we take of the case, the proceedings as to the alternative verdict are of no present import. But we add that the alternative verdict method adopted at this trial is one making for efficiency and economy, is fully warranted by the Massachusetts statutes as to procedure, here applicable under the Conformity Act (Comp. St. § 1537), and is consistent with recent federal legislation. See Acts Mass. 1915, c. 185, § 1; Rev. Laws Mass., c. 173, § 120; Bothwell v. Boston Elevated Ry., 215 Mass. 467, 476, 102 N. E. 665, L. R. A. 1917F, 167 Ann. Cas.

1914B, 275, and cases cited; 26 Harvard Law Review, 732; 31 Harvard Law Review, 685; Plews v. Burrage (C. C. A.) 274 Fed. 881.

[2] The gist of the case is whether the issue presented as to infringement is one of law or of fact. The District Court held that, in view of the prior art and of the important testimony of the patentee, which was not before the court in the case of Automatic Pencil Sharpener Co. v. Stewart Mfg. Co., 249 Fed. 52, 161 C. C. A. 112, assuming every disputed fact to be found in favor of the plaintiff, the claim in suit was not entitled to a construction sufficiently broad to cover the defendant's machine.

It is not entirely easy to reconcile all the expressions of the Supreme Court on this question of when a patent infringement case presents a question of fact and when one of law only. In some of the earlier cases are fairly broad statements to the effect that questions of construction in the light of the prior art—particularly when there is expert evidence—as well as questions of infringement, are questions of fact. Cases illustrating this view are the following: Coupe v. Royer, 155 U. S. 565, 575, 577, 15 Sup. Ct. 199, 39 L. Ed. 263; Royer v. Shultz Belting Co., 135 U. S. 319, 10 Sup. Ct. 833, 34 L. Ed. 214; Keyes v. Grant, 118 U. S. 25, 6 Sup. Ct. 950, 30 L. Ed. 54; Tucker v. Spalding, 13 Wall. 453, 455. 20 L. Ed. 515; Bischoff v. Wethered, 9 Wall. 812, 815, 19 L. Ed. 829. See also Trustees, etc., v. Fountain, etc., Corp., 218 Fed. 642, 134 C. C. A. 663, where Judge Lacombe quotes from the chief authorities. Compare Heide v. Panoulias, 188 Fed. 914, 917, 110 C. C. A. 656.

On the other hand, the later cases stress the view that it is for the court to construe patents as written instruments, dealing with the prior art somewhat as the surrounding circumstances and status of the parties are dealt with in construing other contracts, and also, when expert evidence is not needed to explain terms of art, to determine the question of infringement as one of law.

The latest and most authoritative expression of the rule is found in the opinion by Mr. Justice White in Singer Mfg. Co. v. Cramer, 192 U. S. 265, 24 Sup. Ct. 291, 48 L. Ed. 437, where the learned justice says:

"As in each of the patents in question is apparent from the face of the instrument that extrinsic evidence is not needed to explain terms of art therein, or to apply the descriptions to the subject-matter, and as we are able from mere comparison to comprehend what are the inventions described in each patent and from such comparison to determine whether or not the Diehl device is an infringement upon that of Cramer, the question of infringement or no infringement is one of law and susceptible of determination on this writ of error. Heald v. Rice, 104 U. S. 737; Market Street Cable Ry. Co. v. Rowely, 155 U. S. 621, 625."

In Brothers v. Lidgerwood Mfg. Co., 223 Fed. 359, 138 C. C. A. 460, Judge Lacombe states the rule as follows:

"It is well settled that when the validity of a patent is to be determined and its claim construed by reference to prior patents, about the dates and authenticity of which there is no controversy, the trial judge will usually construe those documents as he would other documents; his doing so does not invade the province of the jury. There may be exceptional cases, but this is not one of them. The first questions, therefore, for this court to determine, are wheth-

er, in view of the prior art patents, the one in suit is valid, and what is the scope of its claims."

In Walker on Patents (5th Ed.) § 536, it is said:

"The judge may direct the jury to return a verdict for the defendant, where it is entirely clear that the plaintiff cannot recover, but not otherwise. Such a direction may therefore be given, where want of novelty or want of invention is clearly shown by a prior patent, but not where that question is doubtful. And such a direction may be given where the question of infringement depends entirely upon the construction of the patent; and where that construction does not depend upon any doubtful question of the prior art.

"But where the question of infringement depends upon the construction of the patent, and that construction depends upon a doubtful question in the prior art, the latter question should be left to the jury; and the dependent question of infringement should also be left to the jury to decide."

We think this case falls within the rule laid down by Mr. Justice White, and that the court below did not err in ordering a verdict for the defendant.

[3] A brief consideration of the patent in suit, of the prior art, and of the defendant's device will, we think, suffice to show that there was no evidence that would warrant the jury in finding that claim 4 of the plaintiff's patent, the only claim in suit, was infringed by the defendant's device.

The plaintiff's patent describes a planetary pencil sharpener; that is, a sharpener in which the cutter, while being rotated on its own axis, is, with the block which holds the pencil against the cutter, rotated around the pencil. Pencil sharpeners of the planetary type are old. Plaintiff's patent, like other sharpeners, is merely for an alleged new combination with elements all, or nearly all, old. It is plainly entitled to no broad range of equivalents.

We find detailed consideration of the prior art unnecessary. It is enough to note that examination of it shows, as does the evidence of the plaintiff's patent expert, who may be fairly assumed to have put the plaintiff's case in the strongest possible light, that there is no new element in the Webster patent, unless possibly it be found in a cutter with spiral blades.

Plaintiff's expert, referring to the Rice patent, No. 230,338, dated July 20, 1880, and other patents, cited in the prior art, says:

"I think the conical spiral cutter is the leading, important thing in Webster's invention."

And again:

"The Court: You agree, Mr. Livermore, that the claim in suit reads on the Livingston device except for the form of the cutter?

"The Witness: Except for the character of the cutter; yes. Aside from that, it is largely a planetary machine."

The Livingston patent was No. 445,677, dated February 3, 1891.

Webster in his specification sets forth that the object of his improvement is to provide a simple and efficient device for pointing the pencil in a perfect manner without breaking the lead; a further object being to provide means to automatically feed the pencil against the cutter. He then describes a combination of crank, shaft, gears and devices to secure the necessary rotary movements. The cutter is described

as shaped like "the frustum of a cone" and "provided with a plurality of spiral blades"; also as so mounted on a shaft that, by "putting more washers between the hub and the cutter and fewer between the screw and the cutter I can adjust the said cutter longitudinally," so as to "allow for the grinding of the blades and the adjustment of the cutter accordingly," and thus to "greatly prolong the life of the cutter." As his conical shaped cutter is on a shaft running parallel to the block which holds the pencil, the cutter must obviously be made conical, so as to produce the desired conical shape in the sharpened pencil. Nowhere in the specification or drawing is any other than a conical shaped cutter mentioned or shown.

In brief, the plaintiff's patent disclosed a combination, perhaps new, of mounting and operating devices, and of a block with a conical recess holding the pencil against a conical shaped cutter with spiral blades, and with a special provision for adjustment by shifting washers on the axle carrying the cutter. It does not show a combination in which a cylindrical cutter will function.

Most of the 14 claims, explicitly or by reference to the drawings, include the conical shaped cutter as a part of the combination claimed. Claim 4, upon which this suit is brought, is as follows:

"In a pencil sharpener, a cutter provided with spiral blades, said cutter being mounted upon an axle upon the opposite end of which is a pinion, an internal gear secured to the stationary casing, and with which said pinion meshes, said axle being mounted in a bearing which is mounted upon a second axle, a crank secured to said second axle, and a block secured upon said second axle adjacent to said cutter, and provided with a conical groove adapted to receive a pencil and direct and hold the same against the said cutter, substantially as and for the purpose set forth."

Turning now to the defendant's device, we find a sharpener with a pair of cutters, both cylindrical, with an operating or rotating device substantially different from Webster's, and without any means of adjusting the cutters as they wear in use. In defendant's structure, the conical shaped cutter, necessary in the plaintiff's device to sharpen a pencil into a conical shape, is eliminated by so tilting the cylindrical cutters as to present them at a proper angle to the pencil. Manifestly, such tilting of the cutters requires a substantially different arrangement of the axle and of the operating machinery. We think it impossible to hold that the conical shaped cutter, operating on an axle parallel to the cutter, may be found to be the equivalent of cylindrical shaped cutters, so tilted and operated as to perform the same function.

This difference between the two machines is obviously of very great importance. It appears, not only from observation of the devices themselves, as shown in the plaintiff's patent and in defendant's machines, but from the testimony of Webster, the patentee. He testifies that he recognized at the outset that a conical shaped cutter had great disadvantages; that it was disproportionately expensive to produce. In fact, his device for a conical shaped cutter never met with commercial success; 80 to 90 were made, then the manufacture stopped. Meantime, as he testifies, for two or three years he devoted himself to solving the problem of so arranging the axles and operating devices as to permit the use of cylindrical shaped cutters; finally, as he claims,

achieving success through a new mechanism for mounting the cylindrical cutters, for which he obtained in 1906 a patent, No. 819,104. To change from the conical to the cylindrical cutter involved invention; it was not merely mechanical adjustment. Webster could not get this invention by merely claiming it, if he did claim it in claim 4; he must disclose it. He did not disclose it.

We have, then, a case where—paraphrasing the language of Mr. Justice White in Singer Mfg. Co. v. Cramer, supra—by a mere comparison of the patent with the defendant's device we are able to comprehend what are the inventions described, and from such comparison to determine whether or not the defendant's device is or is not an infringement of the plaintiff's device, and also a case in which the patentee himself has testified that it required years of study on his part to make the invention as to mounting and operating cylindrical cutters necessary to bring the defendant's device within the scope of the claim sued upon.

As the plaintiff's patent has now expired, it would be of no advantage either to the parties or to the public for us to consider its validity and scope. What we have said is enough to dispose of this case.

We do not overlook that the Court of Appeals for the Seventh Circuit in the Stewart Case, supra, took a somewhat different view as to the construction of this patent. We have, of course, the greatest deference for the opinion of that learned court, when the record before it is closely analogous to the record before us. Now, as always, we regret that there should be necessity of different views in different circuits as to the scope and validity of the same patent. But the record before that court was, as the defendant justly contends, radically different from the record before us. We cannot on this record accord with the view there expressed as to the scope to be given Webster's patent.

The judgment of the District Court is affirmed, with costs to the defendant in error.