### BRADT v. KELSEY–HAYES WHEEL CORPORATION.

No. 7453.

District Court, E. D. Michigan, S. D.

May 1, 1936.

Ralph S. Binns, of Detroit, Mich., for plaintiff.

Arthur C. Beaumont and Whittemore, Hulbert, Whittemore & Belknap, all of Detroit, Mich., for defendant.

TUTTLE, District Judge.

This is an action based on the alleged infringement of letters patent No. 1,550,-145 to Harold J. Bradt, dated August 18, 1925, for demountable rim for vehicle wheels. The bill of complaint charges defendant with infringement of claims 1 and 2 of the patent in suit.

Plaintiff and defendant by stipulated bill of particulars have brought into the record defendant's wheel structures complained of by plaintiff, viz., Exhibits (a) to (i), inclusive.

This cause is now before the court on defendant's motion to dismiss the bill of complaint under Equity Rule 29 (28 U.S. C.A. following section 723), on the ground that said bill, the bill of particulars, and the exhibits admitted in the bill of particulars, clearly show on their face that defendant does not infringe claims 1 and 2 in suit.

The law is well established that where the alleged infringing device or devices are before the court in response to interrogatories or a motion for particulars, the question of infringement may be determined upon a motion to dismiss. Coulter et al. v. Eagle & Phenix Mills, 35 F.(2d) 268, 270 (C.C.A.5); Van Camp Sea Food Co., Inc., v. Westgate Sea Products Co., 28 F.(2d) 957, 958 (C.C.A.9); Ceasar v. Joseph Pernick Co., Inc. (D.C.) 1 F.Supp. 290; Wilson v. American Ice Co. et al. (D. C.) 206 F. 736.

It is also well settled that on a motion to dismiss the court may consider not only the bill of complaint, including the patent

in suit and exhibits before the court on bill of particulars, but in addition, anything within the common knowledge of the court including publications and documents about which there can be no dispute. American Fibre-Chamois Co. v. Buckskin-Fibre Co. et al., 72 F. 508 (C.C.A.6); Friend et al. v. Burnham & Morrill Co., 55 F.(2d) 150, 155 (C.C.A.1).

It would, of course, be to the advantage of both the prevailing party and the defeated party, in every lawsuit, if there were some way by which a court, at the very outset, could look into the issues involved and decide which party was right and which was wrong, and save them the expense of a lawsuit. That just isn't possible and, therefore, we have lawsuits.

But, to the extent that a court can look into the issues involved at the outset and decide the rights of the parties, to that extent it is the duty of the court to do so. This is more often possible in the field of patent law than in other branches of the law. In criminal cases, it cannot be done at all. The situation is such that no court is permitted to decide the issue until the last word is said.

Although a patent carries the presumption of validity, it does not carry with it the presumption of infringement. The burden of proof is upon the plaintiff to show infringement. If the defendant tenders to the court the things it is making, and the plaintiff agrees that they are the things which are relied upon as being the infringing structures, then the court does have a chance to determine the issue. I am inclined to think that probably this method of promptly determining issues can be used more than courts have been using it. Such procedure saves expense to the litigants as well as the time of the courts.

I have been living with the things that the patent in suit has to do with. I began three-score years ago to look at tires and hammer iron tires onto wood fellies when they became loose in the summertime. I have often on a hot day turned a pail of water on an old wooden felly so that it would swell and tighten the tire. I couldn't contract the iron tire, but I could swell the wood felly and make it fit. Every man who has used wagons and buggies has had that experience.

Then I began with the automobile, and for many years I endured the hardships of the average man in changing tires. I was glad when I could change wheels instead of tires. We thought the demountable rim a grand thing, and it was, compared to carrying patches and a hand pump.

As I examine the patent in suit and look at the rim of the patent in suit, I find that in the title of the patent it is simply called a "demountable rim," and it is plain that the thing the patentee Bradt had in mind was that problem of being able to take the rim off and put the rim on again, and still have that rim tight so it wouldn't creep.

The patentee says in his specifications, beginning with line 11: "My invention has reference to that class of disk wheels which are provided with demountable rims permitting of a punctured or injured tire being easily and quickly replaced by another tire." That was the problem with which he was dealing.

Now when we consider the defendant's wheels, that problem is not dealt with in this way by the defendant. It does not deal with the problem of a demountable rim. It deals with the problem of the demountable wheel.

What the plaintiff here seeks to do is to take the claims in suit, which deal with the demountable rim and the way it is put onto the wheel to make it tight and keep it from creeping about the circumference of the wheel, and apply the claims to the manner of manufacturing a wheel in a factory. When we get back to the method of making a rim rigid with a wheel, and fast to it, we then get over into a very old art. We had that to deal with in the wagon and buggy, before it came to the automobile, and we had that to deal with in the automobile before we came to the demountable rim.

When we look at defendant's structures, we find that they have no demountable rim. They are wheels, and, of course, being wheels, they have to be made in the factory.

The idea of having spokes and a felly around the spokes is very old in the art. The spokes terminate in a circle and terminate in the felly, and are held in place by a metal rim. The rim is tightly held by the pressure of the ends of the spokes against the felly. The very fact of an outer circle being so small that it presses inwardly on the inner circle is as old as the artillery wheel itself.

The validity of the patent in suit as applied to demountable rims is presumed. If broadened to include the wheel-making art and what is turned out by the manufacturer of wheels in one rigid structural unit, like defendant's structures before the court, I think it would be void and anticipated and old in the art. When properly construed, I know of nothing in the art that makes it difficult to give the patent in suit what I ought to give it on a motion of this kind, the presumption of validity; but I think that it has to do entirely with the demountable rim. That is the subject of the patentee's invention. Patentee says he was thinking about the man who had to change his tire.

Now the defendant is not using the invention of the patent in suit. Defendant has no problem of lugs to secure the demountable rim to the wheel body. Defendant is concerned only with the manufacture of complete, rigid units, which are the wheels stipulated for the purpose of this motion. Defendant may take its decree holding claims 1 and 2 of the Bradt patent in suit, No. 1,550,145, not infringed by the defendant's structures of which complaint is herein made.

Upon authority of Briggs v. United States, 45 F.(2d) 479, 480 (C.C.A.6); Lewys v. O'Neill et al. (D.C.) 49 F.(2d) 603, 618; Hazeltine Corporation v. Radio Corporation of America (D.C.) 52 F.(2d) 504, my opinion may stand as the findings of fact and conclusions of law under Equity Rule 70½ of the Supreme Court (28 U.S.C.A. following section 723).