**ALL STATES PLASTIC MANUFACTURING CO., INC., an Illinois corporation, Plaintiff,**

v.

**WECKESSER COMPANY, INC., an Illinois corporation, Defendant.**

**No. 71 C 1877.**

United States District Court,
N. D. Illinois.
July 31, 1973.

Edward C. Threedy, Threedy & Threedy, Chicago, Ill., for plaintiff.

Leonard S. Knox, Chicago, Ill., for defendant.

Bauer, District Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I. The Parties

Plaintiff, All States Manufacturing Co., Inc., is a corporation organized under the laws of the State of Illinois, having its principal place of business in Chicago, Illinois, within the Northern District of Illinois, Eastern Division. Defendant, Weckesser Company, Inc., is a corporation organized under the laws of the State of Illinois, having its principal place of business in Chicago, Illinois, within the Northern District of Illinois, Eastern Division.

### II. Court's Jurisdiction

Civil Action No. 71 C 1877 is a patent infringement suit, and this Court has jurisdiction thereof under 28 U.S.C. § 1338 and § 1400(b).

### III. The Issues

This civil action was commenced with the filing of a complaint charging patent infringement of the Eberhardt patent, No. 3,484,905. Defendant answered the complaint and filed an accompanying counterclaim seeking a declaration of invalidity and non-infringement of the patent in suit.

In addition to denying plaintiff's charge of patent infringement, defendant asserted that the claims in issue are invalid for non-compliance with 35 U.S. C. § 112; as lacking invention over the prior art devices as well as the prior art patents; and as being obvious as a whole at the time of the alleged invention to a person having ordinary skill in the art to which the alleged invention relates.

### IV. Patent Grant and Ownership

On December 23, 1969, United States Letters Patent No. 3,484,905 issued for a bundle tie on an application filed August 8, 1968 by Robert Eberhardt, under Serial No. 751,137. The entire right, title and interest in and to the Eberhardt patent, No. 3,484,905, including the right to bring suit for infringement thereof, has been assigned to plaintiff.

### V. Acts of the Parties

Prior to 1968, plaintiff corporation did not manufacture a bundle tie of the type claimed in the patent in suit, notwithstanding that plaintiff was in existence since 1963 and its general business was the manufacture of plastic fastening devices (R. 34). Defendant corporation has been engaged in the business of manufacturing plastic electronic hardware, such as cable and/or bundle ties, since 1955 (R. 89). In 1956 defendant corporation designed and manufactured a band clamp (DX 2) which was, sometime in the latter part of 1957, replaced by a wedge-lock band clamp (DX 3), both of which performed the identical function performed by the bundle tie disclosed in the patent in suit (R. 95).

### VI. The Patent in Suit

The patent in suit, No. 3,484,905, discloses a flexible tie for a bundle of electrical conductors, the tie being of a one-piece molded plastic composition including a body providing an elongated strap-like member having a series of teeth extending transversely to the length thereof, with a head provided at one end of the strap and having formed therethrough an aperture and providing within the aperture a mounting ledge for a locking pawl which provides a sharp edge adapted to have locking engagement with a selected tooth provided

by the strap body after the same has been wrapped about a bundle of electrical conductors.

The patent in suit contains nine claims, with claims 1 through 8 being charged to be infringed. Claims 1 and 7 are independent claims, claims 2 through 6 being dependent upon claim 1, and claim 8 being dependent upon claim 7.

The claims in issue are fully embodied in independent claim 1 of the patent in suit, which reads as follows:

A one-piece bundle tie of resilient, but generally shape-retaining material adapted to be looped upon itself in adjustable self-locking relation comprising:

a strap portion having a plurality of transverse teeth spaced longitudinally thereof,

a head at one end of said portion, said head having an aperture therethrough to pass the strap,

a ledge extending into said aperture from a wall thereof,

said ledge having a face transverse to the plane of the strap when the strap is passed through the aperture,

a pawl of essentially rhombohedral configuration carried by said ledge,

one fact of the pawl being co-planar with said ledge face and extending into said aperture,

one of the sharp edges of the rhombohedral configuration extending into the path of the strap to engage a selected one of said teeth when the tie is secured around the bundle.

None of the claims in issue are the claims originally filed but define an invention which was limited by amendments made by applicant during prosecution of the application in the United States Patent Office (DX 11). Each of the claims in issue contains a recognized limitation, in that the locking pawl is described therein as being of "essentially rhombohedral configuration," (R. 66) such limitation having been inserted into the claims by amendment in order to secure their allowance.

VII. *Effective Date to Which Plaintiff is Entitled*

■■ For the purpose of determining the date of the invention disclosed in the patent in suit, there must be proof of two acts, namely, conception and reduction to practice. An invention may be reduced to practice by actually embodying the invention into a practical form, and this is technically termed an "actual reduction to practice." The other way to reduce an invention to practice is by filing an application for patent thereon, which is termed a "constructive reduction to practice." The invention is not completed until there has been actual or constructive reduction to practice.

■ The burden of carrying an invention back of the date of filing of the patent application thereon is heavy, and the evidence tending to establish such earlier date must be so clear and unequivocal as to leave no reasonable doubt. McIlvaine Patent Corporation v. Walgreen Co., et al., 138 F.2d 177, 179 (7th Cir. 1943). An inventor's testimony must be corroborated. Howe v. General Motors Corporation, 252 F.Supp. 924, 936 (N.D.Ill.1966).

■ Plaintiff has offered no corroborating evidence that the patentee Eberhardt conceived the alleged invention of the patent in suit prior to its effective filing date of August 8, 1968. Nor has plaintiff offered any corroborating evidence that the patentee Eberhardt ever actually reduced to practice the patented structure before August 8, 1968, the filing date of the patent in suit, and this Court therefore finds as a fact that the plaintiff is entitled to no date of invention prior to August 8, 1968.

VIII. *Prosecution of the Patent in Suit*

The Eberhardt application for the patent in suit, Serial No. 751,137, filed August 8, 1968, contained eight claims, the broadest claim being original claim 1 which defined a one-piece plastic bundle tie as having a resilient pawl carried by

a ledge, with the pawl having a sharp edge at its distal end to engage a selected tooth on the bundle tie strap portion. Original dependent claim 3 further defined the pawl as a "parallellopiped" (DX 11).

The original eight claims of the Eberhardt application were rejected by the Patent Office as being completely obvious in view of the Orban patent, No. 3,368,247, dated February 13, 1968, and in view of the Goldman patent, No. 3,376,004, dated April 2, 1968.

■ In response to the rejection of all of the original eight claims of the application for the patent in suit, the applicant Eberhardt filed an amendment on July 8, 1969 in which he amended the specification to specifically define the pawl as being "essentially rhombohedral in configuration," and rewrote original claims 1 through 6 and 8 in amended form to include the structural limitation which recited that the pawl was no longer resilient, but was of "essentially rhombohedral configuration." (DX 11)

In an endeavor to establish a patentable invention over the prior art, the applicant of the patent in suit went so far as to amend without support his specification and claims to provide an exact, specific and limiting description of the essential element, to-wit, the pawl, as being "rhombohedral in configuration" (DX 11).

The language used in the claims as chosen by the applicant Eberhardt, defines a structure not shown in the drawings or described in the specification, as required by 35 U.S.C. § 112.

The voluntary insert by the applicant Eberhardt in the description of the invention, to define a locking pawl as being of "essentially rhombohedral configuration" and the inclusion of such term in the amended claims without proper support in the application as originally filed, constitutes new matter in violation of 35 U.S.C. § 132.

In arguing the patentability of the amended claims, the applicant Eberhardt consistently referred to and relied upon the fact that the structure of the pawl was now specifically defined as being "rhombohedral." Applicant by way of argument addressed to the Patent Office in response to the rejection of his application, indicated that his now defined "rhombohedrally shaped pawl" functioned differently from the locking pawl of the cited Orban patent, No. 3,368,247, in that the latter pawl which was described as "hinged," did not flex, but rotated, while the rhombohedrally shaped pawl as now claimed by Eberhardt, flexed rather than pivoted and therefore provided a substantial advantage over the function of the prior patent.

Defendant's expert witness testified that the uncited prior art patents to Bourne, No. 3,486,201 (R. 147) and Litwin, No. 3,214,808 (R. 148) described their pawls as "flexing." Thus, even the functional differences argued by the applicant Eberhardt before the Patent Office, did not exist.

## IX. Scope and Content of the Prior Art

Defendant gave notice under 35 U.S.C. § 282 of the prior art that it would rely upon at the trial. At the trial, defendant through its expert witness identified the structure shown in each of the prior art patents relied upon (DX 15) and made an element-by-element comparison with the claims in issue.

The Patent Office in allowing the Eberhardt application on which the patent in suit issued, never considered the following prior art set forth in DX 15:

| Patent No. | Date | Patentee |
|---|---|---|
| 2,915,268 | Dec. 1, 1959 | Wrobel |
| 2,969,216 | Jan. 24, 1961 | Hallsey |
| 2,979,794 | Apr. 18, 1961 | DeBartolo |
| 3,009,220 | Nov. 21, 1961 | Fein |
| 3,127,648 | Apr. 7, 1964 | Emery |
| 3,214,808 | Nov. 2, 1965 | Litwin |
| 3,486,201 | Dec. 30, 1969 | Bourne |
| | (filed Aug. 5, 1968) | |
| 3,537,146 | Nov. 3, 1970 | Caveney |
| | (filed Aug. 6, 1968) | |

All of these prior art patents as contained in DX 15 disclose a one-piece molded plastic bundle tie which fully an-

ticipates the structure as it is broadly interpreted by plaintiff.

The prior art patents as contained in DX 15 clearly make obvious the claimed structure as broadly interpreted by the plaintiff.

Defendant relies upon each of the prior art patents in DX 15 and, as such, each of these prior art patents is more pertinent to the subject matter claimed in the patent in suit than the prior art patents cited by the Patent Office during the prosecution of the application for the patent in suit.

### X. Comparison of the Prior Art with the Claims in Issue

■ As clearly depicted by DX 16, a chart showing a comparison between the claimed structure of the patent in suit and the prior art patents to Emery, No. 3,127,648, and Litwin, No. 3,214,808, each of these prior art patents discloses every structural element of the combination defined by the claims in issue as interpreted by the plaintiff (R. 137–138; 147–148).

Notwithstanding that the patentee of the patent in suit, as well as plaintiff's expert witness, testified that the configuration of the pawl was essential to the invention of the patent in suit, plaintiff disregarded the clear import of such limitation in an attempt to broaden the claims in issue to read upon the accused structure and, in so doing, extended the scope of such claims so as to read on the prior art shown in DX 16.

Plaintiff, through the patentee as well as its expert witness, disregarded the limitation contained in the claims that the pawl be of "essentially rhombohedral configuration" and interpreted such limitation as reading upon a locking pawl having a plurality of locking teeth such as was shown in the prior art patents to Bourne, No. 3,486,201, and Caveney, No. 3,537,146.

That the plaintiff recognized that the difference in configuration of a locking pawl was essential to the claimed invention, was illustrated when the plaintiff

obtained, over the patent in suit, an improvement patent, No. 3,605,199 dated September 20, 1971 (DX 18), which improvement patent shows all of the structural elements defined by the claims of the patent in suit, except that the locking pawl contained a plurality of teeth or sharp edges having locking engagement with the traverse teeth provided by the strap portion of the bundle tie.

By plaintiff's own attempt to enlarge the scope of the claims in issue, it has embraced all of the teachings of the prior art patents (DX 15) not cited by the Patent Office during the prosecution of the application for the patent in suit and which prior art invalidates the claims in issue.

### XI. Anticipation

The record is clear and the Court finds as a fact that the structure of the claims in issue is anticipated in all material respects by each of the prior art patents contained in DX 15.

### XII. Obviousness

The record establishes by uncontroverted evidence and the Court so finds that any differences between the subject matter of the claims in issue and the prior art contained in DX 15 are such that the subject matter of such claims as a whole would have been obvious at the time the alleged invention thereof was made to a person having ordinary skill in the pertinent art.

### XIII. Infringement

■ In combination claims each and every element must be found in the alleged violating structure to constitute infringement. Plaintiff, in attempting to apply the claims in issue upon the alleged infringing structure, resorted to defining the terms of the claims by comparing them with the accused structure and ignoring the clear and unambiguous definition of the terms of such claims. In determining infringement, every element of a claim charged to be infringed, must be found in the accused device, and

the omission of any one element precludes infringement. F.M.C. Corp. v. F. E. Myers & Bro. Co., 384 F.2d 4 at 10 (6th Cir.); Graphicana Corp. v. Baia Corp., 176 USPQ 455.

■ Defendant made no use of any of the alleged inventive features of the patent in suit, and this is clearly established when one notes that defendant's irregularly shaped pawl does not respond to the patentee's own definition of the term "rhombohedral." For defendant to produce a one-piece molded cable tie with a head at one end thereof and to provide a web or neck portion for supporting an irregularly shaped tooth-bearing pawl which engages with corresponding teeth on the strap portion of the tie, was nothing more than doing what was taught by the prior art, and such action does not constitute infringement. Casco Products Corp. v. Sinko Tool & Mfg. Co., 116 F.2d 119 (7th Cir.).

■ There is no application of the doctrine of equivalents to an element of a claim which is the heart of the invention and which is defined as a limitation to the claimed invention and was the distinguishing patentable feature over the devices of the known prior art. Plaintiff has failed to prove its charge that defendant infringes the claims in issue by manufacturing and selling a one-piece molded plastic cable tie. The record establishes and the Court so finds that the claims in issue contain specific limitations which preclude them from being read on the accused structure manufactured and sold by defendant.

## CONCLUSIONS OF LAW

The Court has jurisdiction of the parties and of the subject matter and venue is properly laid in this District. Plaintiff is the owner of United States Patent No. 3,484,905 dated December 23, 1969, and has the right to sue for infringement.

■ The presumption of validity arising from the grant of a patent does not exist as against prior art not cited by the Patent Office. Pertinent prior art in evidence before this Court was not before the Patent Office in the prosecution proceedings respecting Patent No. 3,484,905 in suit. T. P. Laboratories, Inc. v. Huge, 371 F.2d 231, 234 (C. A. 7, 1966); Amerline Corp., et al. v. Cosmo Plastics Co., 271 F.Supp. 215 (N.D.Ill.1967), aff'd 407 F.2d 666 (C.A. 7, 1969). The patents contained in DX 15 constitute prior art within the meaning of 35 U.S.C. § 102.

■ The combination claims in issue of United States Patent No. 3,484,905 in suit are invalid because they are anticipated under 35 U.S.C. § 102 in all material respects by the prior art, and any differences are minor such that they would suggest themselves to one of ordinary skill in the art. Deep Welding, Inc. v. Sciaky Bros., Inc., 417 F.2d 1227 (C.A. 7, 1969).

The patent in suit, No. 3,484,905 is invalid by failing to comply with the patent laws, particularly 35 U.S.C. § 132, by the inclusion therein of unsupported new matter.

The guidelines for the application of the patentability test of 35 U.S.C. § 103 were set forth by the Supreme Court of the United States in Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966) as follows:

"Under Section 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined."

The claims in issue of United States Patent No. 3,484,905 are invalid because the differences between the subject matter patented and the prior art are such that the subject matter as a whole would have been obvious at the time of the alleged invention to one having ordinary skill in the art. Graham v. John Deere Co., *supra*.

■ Contemporary developments by third parties working in the recognized

art of the patent in suit (Bourne, Patent No. 3,486,201; Caveney, Patent No. 3,537,146) are persuasive evidence that the subject matter of the claims in issue of the patent in suit was obvious within the meaning of. 35 U.S.C. § 103. Felburn v. New York Central Railroad Company, 350 F.2d 416, 425 (6th Cir. 1965); Amerline Corp. et al. v. Cosmo Plastics Co., *supra*.

Defendant has the burden of proof on the issue of invalidity, which burden it has sustained, and the claims in issue of the patent in suit are invalid.

■ The claims of the patent measure the grant. They must, in this instance, define the patentee's structure with sufficient certainty that one skilled in the art can determine whether or not any particular element does or does not fall within its metes and bounds, as well as what feature or features must be altered or omitted if the claims are not to be infringed.

■ Plaintiff acquiesced in the rejection of broader claims during the prosecution of the application for the patent in suit. Limitations were introduced to distinguish over the prior art. The claims in issue were allowed on that basis. These limitations must be considered in determining whether there is any infringement, and when claims for an invention have been abandoned, cancelled or surrendered, they may not be reasserted by the patentee. Graham v. John Deere Co., *supra*.

■ Plaintiff is bound by each of the limitations inserted in its claims in order to obtain a patent and may not deny their materiality to make the claims read on defendant's accused structure. Keating v. Stearnes Imperial Co., 347 F.2d 444 (7th Cir. 1965). Plaintiff has the burden of proof on the issue of infringement, and it has failed to sustained that burden.

Accordingly, defendant has not infringed any of the claims in issue in the instant action involving patent No. 3,484,905.